IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| RONALD YOCCA, RACHEL ESTATES, L.P., MY BROTHER'S HOUSE,<br><br>    Plaintiffs,<br><br>  vs.<br><br>ALLEGHENY COUNTY HEALTH DEPARTMENT,<br><br>    Defendant, | ) Civil Action No. 2:25-CV-00777-CBB<br>)<br>)<br>) United States Magistrate Judge<br>) Christopher B. Brown<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION[1]**
**ON PARTIAL MOTION TO DISMISS, ECF NO. 10**

**Christopher B. Brown, United States Magistrate Judge**

## I.  Introduction

Plaintiffs Ronald Yocca, Rachel Estates, L.P., and My Brother's House

(together, "Plaintiffs") disagree with Defendant Allegheny County (Pennsylvania)

Health Department's ("ACHD") designation of its drug and alcohol recovery house

in one of its boroughs, Turtle Creek, as a "Rooming House."  ECF No. 9 at ¶ 13.  In

Allegheny County, Rooming Houses are required to apply for permits and submit to

yearly inspections from ACHD.  *Id.* at ¶¶ 18-25.  Plaintiffs allege their recovery

house should be treated as a single-family residence, not a Rooming House, and

thus be exempt from these ACHD requirements since its residents live as a

---

[1]  All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

family, and thus have no need for the same health and safety precautions as a standard Rooming House.  *Id.* at ¶¶ 13, 26.  Plaintiffs bring claims against ACHD for violations of the Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act"), Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12131, et seq., ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").  *Id.* at ¶¶ 41-44.

Defendant ACHD filed a Partial Motion to Dismiss Plaintiffs' Fair Housing Act Claims only.  ECF No. 10.  *See also* ECF Nos. 10-11, 19-21.[2]  ACHD does not move to dismiss Plaintiffs' ADA and Rehabilitation Act claims.  ECF Nos. 10-11. Even though the governing standards for claims under the Fair Housing Act, ADA, and Rehabilitation Act "are essentially the same under these three statutes," *McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803, 823–24 (W.D. Pa. 2010); *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.,* 273 F. Supp. 2d 643, 652 (W.D. Pa. 2003) ("The Court concludes that the FHA analysis applies equally to the Barber Center's other claims of unlawful discrimination"), the Court declines to address Plaintiffs' ADA and Rehabilitation Act claims *sua sponte*, and those claims will move forward.

As to the Fair Housing Act, Plaintiffs bring three claims – disparate treatment/intentional discrimination, disparate impact, and failure to reasonably accommodate them.  ECF No. 9.  For the following reasons, the Court will <u>grant</u>

---

[2]      ACHD refiled the Motion and Brief at ECF Nos. 14-15 to include an attorney signature.  For ease of reference, the Court will refer to the unsigned Motion at ECF No. 10 and Brief at ECF No. 11, as they are identical except for the signature.

ACHD's Motion to Dismiss the disparate treatment and disparate impact claims but will <u>deny</u> the Motion to Dismiss Plaintiffs' reasonable accommodation claim.  The disparate treatment and disparate impact claims are dismissed without prejudice.

Should Plaintiffs wish to amend their complaint, they may do so by **April 3, 2026**.  If no second amended complaint is filed by **April 3, 2026**, the Court will assume Plaintiffs wish to proceed solely on their Fair Housing Act reasonable accommodation claim and their ADA and Rehabilitation Act claims, and ACHD's answer will be due by **April 24, 2026**.

## II.    Factual Background

The following allegations in the Amended Complaint are accepted as true with all reasonable inferences drawn in the light most favorable to Plaintiffs.  *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 237 (3d Cir. 2008).

This dispute centers around a drug and alcohol recovery house in Turtle Creek, Pennsylvania (the "Residence").  ECF No. 9 at ¶ 3.  Plaintiff Ronald Yocca is the Executive Director of the non-profit My Brother's House, which runs the Residence and other drug and alcohol recovery homes located in Allegheny County. *Id.* at ¶¶ 3, 5.  Yocca is also the owner of Plaintiff Rachel Estates, L.P., which owns the Residence and rents it to My Brother's House.  *Id.* at ¶¶ 4-5.

My Brother's House has been operating the Residence as a drug and alcohol recovery house since August 2018.  *Id.* at ¶ 8.  To remain at the Residence, men must be screened by Yocca to ensure they remain sober and follow the house rules which are designed to promote recovery and sobriety.  *Id.* at ¶ 9.  The Residence is

self-managed by its residents, and Yocca provides oversight including communication, guidance, and assuring the residents follow the house rules.  *Id.* at ¶ 10.  There is enough room for seven men to live at the Residence.  *Id.* at ¶ 12.

Plaintiffs allege the residents live in a "traditional family setting."  *Id.* at ¶ 12.  While the residents have their own beds or bedrooms, they share the rest of the house and eat meals together.  *Id.*  The residents also follow the same house rules and support each other in their sobriety, employment, and relationships with co-residents and family outside of the home.  *Id.*

On July 16, 2021, ACHD sent a letter[3] to My Brother's House about a complaint about excessive garbage.  *Id.* at ¶ 14.  The letter also stated the Residence was operating as a rooming house without a permit, since more than three non-related people lived there.  *Id.*  Plaintiffs responded on August 24, 2021, notifying ACHD that the Residence was a drug and alcohol recovery residence and not a rooming house.  *Id.* at ¶ 15.  *See also id.* at p. 12.

Plaintiffs allege that being designated as a Rooming House comes with "burdensome" permitting and inspection requirements (the "Permitting Requirements") that would leave them in a state of limbo.  *Id.* at ¶ 36.  *See also id.* at p. 25.  Specifically, under ACHD rules and regulations, a house is considered a Rooming House when four or more people who are not related by blood, marriage, or adoption live in a residence, "whether or not [the residence] is operated for profit."

---

[3]     Plaintiff attached eleven exhibits to the Amended Complaint.  This particular letter is not, however, included.  *See* ECF No. 9.

*Id.* at 20.[4]  *See also id.* at p. 24.  This definition does not apply to families related by blood, marriage, or adoption, nor does it apply if there are three or fewer non-related people in the home.  *Id.*

Under ACHD rules, if a property is a Rooming House, it must follow ACHD's permitting and inspection requirements.  The Rooming House must apply for a permit and must comply with yearly ACHD inspections.  *Id.* at ¶¶ 22-23.  *See also id.* at p. 25, 27 (Permitting Requirements at §§ 612, 615).  Additionally, the Rooming House must provide ACHD with plans and specifications for floor plans, windows, payment fees, and "any other information as [ACHD] may require."  *Id.* at ¶ 25.  *See also id.* at p. 26-27 (Permitting Requirements at § 615).  ACHD can suspend a permit if it determines that "an emergency exists which necessitates immediate action to protect the public health, safety, or welfare," whereby ACHD "may suspend the rooming house permit upon notice to the operator until the suspension is lifted by compliance with the notice or order of the Department, or until the permit is revoked by failure to comply with the order of the Department."  *Id.* at ¶¶ 24.  *See also id.* at p. 25-26 (Permitting Requirements at §§ 610, 614).

Reading the Amended Complaint in the best light for Plaintiffs, they allege these requirements would leave them in limbo since their permit could be suspended or revoked at any time, and because the inspections would be invasive

---

[4]     The full definition reads: "Rooming House: Any dwelling or part of any dwelling that contains one (1) or more rooming units, which space the operator has let to four (4) or more persons who are not related by blood, marriage or adoption, including boarding homes, whether or not operated for profit. A dwelling occupied by a group of not more than three (3) persons, who need not be related by blood, marriage or adoption, living together as a single housekeeping unit and sharing common facilities as considered appropriate for a family related by blood, marriage or adoption is not considered a rooming house under this definition." *Id.* at ¶ 20. *See also* ECF No. 9 at 24.

for the residents. ECF No. 9 at ¶¶ 36-37. *See also* ECF No. 20 at 6-8. They also allege that when "deprived of a family like community based-residency, those in drug or alcohol recovery are most often relegated to occupancy in an institutional setting." *Id.* at ¶ 38.

Between September 23, 2021 and December 9, 2021, three months after ACHD sent its initial letter about excessive garbage and operating a rooming house without a permit, ACHD issued additional inspection reports and penalty notices informing Plaintiffs that they are operating the Residence as a Rooming House without a valid permit and that ACHD would issue civil penalties if they did not comply. *Id.* at ¶¶ 16-19. *See also id.* at p. 15-18.

On January 7, 2022, Plaintiffs submitted a written appeal in which they requested an accommodation from the Permitting Requirements and, in doing so, claimed they are disabled people protected by the Fair Housing Act. *Id. See also id.* at p. 28. Plaintiffs requested that they be treated as a single-family residence since they are living in a family setting, and families related by blood, marriage, or adoption, "have no such occupancy limits and have equal or greater health and safety risks" but are not subject to the Permitting Requirements. *Id.* at ¶ 13.[5] Plaintiffs reiterated their requested accommodation at an administrative hearing

---

[5] It is the Court's understanding from Plaintiffs' briefing that this accommodation request is based off of the "Oxford House model," where self-sufficient and collective sober-living/recovery homes are granted exceptions from rooming house requirements since they operate as a family unit. ECF No. 20 at 5. Discovery will reveal whether the Residence run by My Brother's House meets the standards of the Oxford House model. *See, e.g., Schoenstein v. Constable*, No. CIV.A. 13-6803 JAP, 2014 WL 6685409, at *2 (D.N.J. Nov. 26, 2014) (explaining that the "Oxford House model was created as an exception to the rooming/boarding house licensing requirement," and listing the criteria for Oxford Houses).

on March 9, 2022. *Id.* at ¶ 27. *See also id.* at p. 33-34. An ACHD hearing officer ultimately found in favor of ACHD on July 13, 2022. *Id.* at ¶ 33.

### III.   Standard of Review - Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

A Fed. R. Civ. P. 12(b)(6) motion challenges whether the complaint states an actual claim. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A defendant has the burden to show a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining if a plaintiff is entitled

to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

## IV. Discussion

The Fair Housing Act prohibits discrimination based on "race, color, religion, sex, familial status, or national origin" in housing. 42 U.S.C. § 3604. There are three kinds of claims under the Fair Housing Act: (1) disparate treatment/intentional discrimination claims; (2) disparate impact claims; and (3) failure to make reasonable accommodations claims. *Lapid–Laurel, LLC v. Zoning Bd. of Adjustment*, 284 F.3d 442, 448 n. 3 (3d Cir. 2002). Plaintiffs clarify in their Opposition Brief that they are bringing all three types of claims, ECF No. 20, and Defendant ACHD moves to dismiss all three. ECF No. 11.

As an initial matter, Defendant does not challenge the residents' status as disabled under the FHA. *See generally*, ECF Nos. 11, 21. *See also Allentown Victory Church v. City of Allentown, Pennsylvania*, 625 F. Supp. 3d 370, 378, n.4 (E.D. Pa. 2022), *aff'd*, No. 22-2817, 2024 WL 3439772 (3d Cir. July 17, 2024) (stating "drug and alcohol addiction qualif[ies] as a handicap" under the FHA). The Court will address the remaining elements of each claim.

### a. Disparate Treatment/Intentional Discrimination

ACHD argues Plaintiffs' disparate treatment claim (ECF No. 9 at ¶¶ 41-42) should be dismissed because Plaintiffs did not allege any facts or evidence that the Residence's status as a drug and alcohol recovery house was a motivating factor in ACHD's enforcement of the Permitting Requirements. ECF No. 11 at 5.

To prevail on a disparate treatment claim, a plaintiff "must demonstrate that

8

some discriminatory purpose was a 'motivating actor' behind the challenged action. *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005)).  The discriminatory purpose "need not be malicious or invidious, nor need it figure solely, primarily, or even predominantly into the motivation behind the challenged action."  *Id.*  (quoting *Wind Gap,* 421 F. 3d at 177).

A plaintiff can frame a disparate treatment claim as either a facially discriminatory classification or discriminatory animus, but regardless of the classification, "the most fundamental element of the claim is that plaintiff must demonstrate that defendant's alleged discrimination was 'because of a handicap.'" *Wind Gap,* 421 F.3d at 178 (quoting 42 U.S.C. § 3604(f)(2)).

ACHD argues that Plaintiffs have failed to plead anything showing that the residents' disability was a motivating factor.  ECF No. 11 at 5.  It further argues that the Permitting Requirements are not facially discriminatory, and that Plaintiffs' "failed to allege how the [County's] definition of 'rooming house' singles out a protected class, particularly persons with disabilities."  *Id.*  Plaintiffs respond that ACHD is treating its residents as "disparate from those without disabilities" since they do not permit them to be treated as a single-family.  ECF No. 20 at 9.

The Court agrees with ACHD that the Permitting Requirements are not facially discriminatory since they do not single out people with disabilities with different rules.  *See Mealy v. Casablanca Invs., LLC*, No. 2:22-CV-3370-MMB, 2023 WL 2385920, at *3 (E.D. Pa. Mar. 6, 2023) (finding plaintiff pled sex discrimination

9

was a motivating factor because the lease addendum only targeted female residents); *W. Easton Two, LP v. Borough Council of W. Easton*, 489 F. Supp. 3d 333, 355 (E.D. Pa. 2020) ("The ordinance singles out methadone clinics for different zoning procedures such that it is facially discriminatory under the ADA").

The Court also agrees that Plaintiffs have otherwise failed to allege that discrimination was a motivating factor in ACHD's enforcement. The Amended Complaint alleges only neutral reasoning – ACHD only found out about the number of residents because of garbage outside the home, and ACHD's letters to Plaintiffs only discuss the Permitting Requirements with no mention of the residents' recovery or sober status. ECF No. 9 at 15-18. *Compare Allentown Victory Church,* 625 F. Supp. 3d at 382 (finding allegations of discriminatory animus to be conclusory because they did not allege any examples of animus) *with Calderia, LLC v. City of Claremont, NH*, 768 F. Supp. 3d 261, 274 (D.N.H.), *reconsideration denied*, 779 F. Supp. 3d 144 (D.N.H. 2025) (finding plaintiffs alleged motivating factor because letters from City "evinces a distinct focus by the City on plaintiffs' intent to use the Property as a sober home rather than their compliance" with City rules).

There is nothing in the Amended Complaint tying ACHD's enforcement of the Permitting Requirements to the residents' disability or the Residence's status as a recovery home. As amendment is not futile, the Court will dismiss this disparate treatment claim <u>without</u> prejudice and with leave to amend. *See, e.g., Gertrude A.*

*Barber Ctr.,* 273 F. Supp. 2d at 656.

### b. Disparate Impact

Plaintiffs next allege the ACHD Permitting Requirements have a disparate impact on people with disabilities.  *See* ECF No. 9 at ¶¶ 41-42.  Plaintiffs have not supported their claim, and ACHD's Motion to Dismiss will be granted.

To allege a disparate impact claim, a plaintiff must show (1) the occurrence of certain outwardly neutral practices, (2) which have a significantly adverse or disproportionate impact on members of the protected class.  *Lapid-Laurel*, 284 F.3d at 467.  Disparate impact claims "do not require proof of discriminatory intent," and "permit federal law to reach conduct that has the necessary and foreseeable consequence" of burdening a particular group.  *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 381 (3d Cir. 2011).

The Third Circuit Court of Appeals has recently held that "the complaint must first allege that a specific practice or policy has a discriminatory effect on a protected class," and that the "complaint must provide data 'plausibly suggest[ing] that the challenged [policy or] practice actually has a disparate impact.'"  *Oxford House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 494–95 (3d Cir. 2025) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210 (2d Cir. 2020)).  The "data need not be a perfect methodological fit . . . so long as it plausibly suggests an actual statistical disparity for members of the protected class and raises a reasonable expectation that discovery will reveal methodologically sound statistical evidence at

11

trial." *Id.* (internal citations omitted).

The Parties here debate the second element – whether the Permitting Requirements have a significantly adverse or disproportionate impact on the disabled. ACHD argues Plaintiffs have not shown how its actions have a greater impact on people with disabilities, ECF No. 11 at 5; ECF No. 21 at 4, while Plaintiffs respond that the "inspection process exposes the residence to ongoing time, stress, and questions about costs and sustainability." ECF No. 20 at 10-11.

Plaintiffs have not offered support – statistical or otherwise – for their position that the Permitting Requirements have a disproportionate effect on disabled individuals. The most Plaintiffs offer here is that "[d]rug and alcohol recovery residences in general, and My Brother's House, cause no known health and safety risks that should give rise to Health Department rules and regulations that prohibit them from housing more than an arbitrary, low number of occupants . . . without compliance with onerous, unnecessary, and cost prohibitive requirements." ECF No. 9 at ¶ 13. Their claim fails because they do not allege that disabled people are more likely to live in a high-occupancy home/rooming house, are more likely to be subjected to these Permitting Requirements, or are otherwise burdened more by these Requirements than non-disabled people. *See Muhammad v. Nat'l Ass'n of Realtors,* No. 5:24-CV-5543, 2025 WL 2171143, at *17 (E.D. Pa. July 31, 2025) ("Muhammad does not allege any facts, such as statistics, showing how frequently minority brokers were allegedly forced out of business . . . when compared to white realtors"); *Hill v. Philadelphia Hous. Auth.*, No. 25-CV-3826, 2025 WL 2180522, at

12

*3 (E.D. Pa. July 31, 2025) ("Nor does the Complaint state a disparate impact claim since Hill does not allege any facts, statistical or otherwise, from which the Court could conclude that the PHA has adopted practices that disproportionately impact African-Americans").

Plaintiffs have not sufficiently established a direct link between the enforcement of these Permitting Requirements and a disparate impact on disabled individuals.  As this claim is not futile, it will be dismissed <u>without</u> prejudice and with leave to amend.  *See, e.g., Gertrude A. Barber Ctr.,* 273 F. Supp. 2d at 655.

### c.  Reasonable Accommodation

The Plaintiffs' only viable Fair Housing Act claim at this stage is their reasonable accommodation claim and it survives this Motion to Dismiss.  ECF No. 9 at ¶¶ 41-43.  Plaintiffs allege that ACHD has failed to reasonably accommodate their request to be treated as a single-family residence, as families are not subjected to these same Permitting Requirements.  *See also* ECF No. 20 at 6-7.

ACHD argues Plaintiffs failed to allege any of the elements of the claim, and "do not meet the burden in showing that whatever accommodation they may be seeking is necessary for the occupants to equal opportunity to use and enjoy the Residence." ECF No. 11 at 6.  Plaintiffs argue they have sufficiently alleged that ACHD failed to provide it with a reasonable accommodation.  ECF No. 20 at 6-8.

Under the Fair Housing Act, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a

13

dwelling," constitutes illicit "discrimination." 42 U.S.C. § 3604(f)(3)(B). A plaintiff "need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity." *Vorchheimer v. Philadelphian Owners Assoc.*, 903 F.3d 100, 111 (3d Cir. 2018). Plaintiffs have pled all three elements.

As to the first element, Plaintiffs pled refusal in that ACHD denied their request to be treated as a single-family residence rather than a rooming house. ECF No. 9 at ¶¶ 13, 26-27; 32-33. *See also Place v. Zoning Hearing Bd. of City of Nanticoke*, 714 F. Supp. 3d 471, 479 (M.D. Pa. 2024) (plaintiff meets first element when accommodation request denied).[6]

The second element, whether the requested accommodation is reasonable, is a "highly fact-specific" inquiry. *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996). A reasonable accommodation "'can and often will involve some costs'" on the part of the city. *Place*, 714 F. Supp. 3d at 480 (quoting *Housons*, 89 F.3d at 1104). An unreasonable accommodation, on the other hand, "is one that imposes 'undue financial and administrative burdens' or 'undue hardship' on the municipality" or fundamentally alters the program. *Id.* (quoting *Cmty. Servs., Inc. v. Heidelberg Twp.*, 439 F. Supp. 2d 380, 398 (M.D. Pa. 2006)).

ACHD, citing to *City of Edmonds v. Oxford House, Inc.*, argues Plaintiffs' accommodation request is not reasonable because the FHA does not apply to the conditions inside of a property, including regulations that "prevent overcrowding."

---

[6]    ACHD argues that if offers a fee waiver from the permitting fees. ECF No. 15 at 6. This does not solve Plaintiffs' chief argument – that they should not be treated as a Rooming House at all.

ECF No. 21 at 3 (citing 514 U.S. 725, 735 (1995)). It further argues that the regulations here "are so clearly related to overcrowding that the controversy here is easily distinguishable from a zoning dispute." *Id.* This argument does not sway the Court at this juncture. As an initial matter, *City of Edmonds v. Oxford House* dealt with a narrow question; the Supreme Court held that the City's definition of family was not a maximum occupancy restriction (which is exempted from the anti-discrimination policies of the Fair Housing Act under Section 3607(b)(1)) since it only applied to non-relatives and was not a uniform cap on occupancy. 514 U.S. 725 at 734-35. Additionally, and for the same reasons, it is not clear at this early stage whether ACHD's Permitting Requirements are indeed related to overcrowding, since any number of family members related by blood or marriage can live together without permits or inspections. More discovery is needed.

Accordingly, Plaintiffs have plausibly pled that their request to be treated as a single-family residence is reasonable. ECF No. 9 at ¶ 13. At least at this stage, there is no indication that the accommodation would impose undue burdens or hardship on ACHD or that it would require a fundamental alternation of ACHD's ability to enforce the health and safety of homes in the County. As Plaintiffs point out in their briefing, ACHD enforces the health and safety of single-family residences through means other than this registration and inspection scheme, and ACHD could presumably apply the same standards to the Property. ECF No. 20 at 8. A key example in the Amended Complaint is ACHD's enforcement of the excessive garbage at the Residence, which was resolved via a letter to My Brothers

15

House, and not via the Permitting Requirements.  ECF No. 9 at ¶ 14.  *See also Place,* 714 F. Supp. 3d at 480 (finding plaintiff alleged accommodation for house for people with disabilities was reasonable because "[t]here is no indication that the accommodation . . . would impose undue burdens or hardship on the City").  Much like the plaintiffs in *Calderia, LLC,* 768 F. Supp. 3d at 273, where a sober-living house argued the residents were living like a single-family so "certain public safety requirements do not apply to them in the first place," the Plaintiffs' request here is presumably reasonable because they too argue the Permitting Requirements should not apply to them since they live like a family and not like strangers in a standard Rooming House where the residents would need protections provided by ACHD.

Plaintiffs have also sufficiently alleged the third element – that being treated as a single-family home is "necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); *Vorchheimer*, 903 F.3d at 111.  An accommodation must be "essential" and not just "preferable."  *Vorchheimer*, 903 F.3d at 107.  Reading the Amended Complaint in the best light for Plaintiffs, they allege that the residents need this "family like community-based residency" to recover from drug and alcohol dependency, and since ACHD can suspend the permit at any time on its own choosing (subject to "emergency" circumstances), this community is not stable if subjected to the Permitting Requirements.  ECF No. 9 at ¶¶ 24, 36, 38, 46.  *See also* ECF No. 20 at 7-8.

Again, Plaintiffs have sufficiently alleged a claim for failure to offer a reasonable accommodation claim under the Fair Housing Act, and Defendants'

Motion to Dismiss is denied on this basis.

## V.    Conclusion

For the reasons stated herein, the Court <u>grants</u> ACHD's Motion to Dismiss the disparate treatment and disparate impact claims but <u>denies</u> the Motion to Dismiss Plaintiffs' reasonable accommodation claim.  The disparate treatment and disparate impact claims are dismissed without prejudice.

Should Plaintiffs wish to amend their complaint, they may do so by **April 3, 2026**.  If no second amended complaint is filed by **April 3, 2026**, the Court will assume Plaintiffs wish to proceed solely on their Fair Housing Act reasonable accommodation claim and their ADA and Rehabilitation Act claims, and ACHD's answer will be due by **April 24, 2026**.  An appropriate Order follows.


DATED this 13th day of March, 2026.

BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge


CC:    All counsel of record, *via ECF*

17